[No. 14008.   Department Two.   April 20, 1917.]

THE STATE OF WASHINGTON, *on the Relation of M. Talens,*
*Plaintiff,* v. GEORGE B. HOLDEN, *as Judge etc., Respondent.*[1]

JUDGES—BIAS — CHANGE — MORTGAGE FORECLOSURE SALE — CONFIR-
MATION—"PROCEEDING."  The confirmation of a mortgage foreclosure
sale involves judicial discretion, although no objections were filed,
and is a judicial act in an action or "proceeding," within Rem. Code,
§ 209-1, requiring a change of judges upon the filing of an affidavit
of prejudice.

SAME—BIAS—CHANGE—TIME FOR MOTION.  A motion for a change
of judges on account of prejudice is in time when filed as soon as
it is known that the judge would preside over the department of
the court in which the case was pending.

Application filed in the supreme court February 20, 1917,
for a writ of prohibition to the superior court for Yakima
county, Holden, J., to prohibit the signing of an order con-
firming a judicial sale.   Granted.

*Lee C. Delle,* for plaintiff.

FULLERTON, J.—This is an application for writ of pro-
hibition, made originally in this court.   The facts are these:
On November 4, 1916, M. Talens, the relator, began an ac-
tion in the superior court of Yakima county against one
T. R. Anderson to foreclose a real estate mortgage executed
upon lands situated in the county named.   Default was made
by Anderson, and a decree of foreclosure was duly entered
on January 6, 1917.   On the same day, an order of sale was
issued on the decree, under and by virtue of which the mort-
gaged property was later sold by the sheriff in the manner
prescribed by the statute, the relator becoming the purchaser
at such sale.   On February 17, 1917, the sheriff made return
of the sale to the clerk of the court, who entered the cause
on the motion docket, where it stood for confirmation on the
motion of the relator.

[1]Reported in 164 Pac. 595.

There are two departments of the superior court in Yakima county. At the time of the commencement of the foreclosure suit, and at the time of the entry of the decree therein and the issuance of the order of sale on the. decree, department one of the court was presided over by the Honorable E. B. Preble, and the proceedings were all had in that department of the court. On January 8, 1917, Judge Preble was succeeded in office by Judge Holden, the respondent in this proceeding, who was assigned to preside over the department theretofore presided over by Judge Preble. Prior to the time the return of sale was made by the sheriff and prior to the time the respondent was called upon to take any action in the cause, the relator, through his attorney, filed an affidavit of prejudice against Judge Holden under the act of March 18, 1911 (Rem. Code, §§ 209-1, 209-2), moving that the cause be transferred to department two of the court. This motion was called on for hearing before the respondent on February 19, 1917, when the same was denied by a formal written order signed by the respondent as judge. It was at this stage of the proceedings that the application now before us was made.

In the return of the respondent to the alternative writ issued by this court, the following appears:

"In the case of Talens against Anderson, the court denied the motion for a change of venue conditionally, on no other question excepting formal confirmation of sale appearing to be passed upon in said action, and caused to be entered on the journal of the court of the proceedings for February 19, 1917, the following order therein:

"'M. Talens, vs. T. R. Anderson. Motion for change of judges was argued under the rule by Lee C. Delle, attorney for plaintiff. Motion denied on the ground the cause has been tried on its merits and there are no questions remaining to be passed upon involving discretionary action, and the motion is frivolous and capricious; that if any such question shall arise, said action shall be forthwith transferred to Department 2 of the court.'

"(2)   That on the fifth day of March, 1917, there appeared on the motion docket of Department No. 1, over which the respondent was then presiding, said case of M. Talens vs. T. R. Anderson.   Upon the calling of the motion docket, the following order was made in said cause and entered upon the journal of the court:    ·

" 'M. Talens vs. T. R. Anderson.   Motion for confirmation. There being no objection filed or presented and the proceedings therein appearing to be regular and according to the practice of the court, it is ordered that said sale be confirmed and that formal order confirming the same will be signed upon presentation to the court at any of its regular daily sessions, subject only to the alternative writ of prohibition issued by the supreme court in the case of State ex rel. M. Talens vs. George B. Holden, Judge.'

"(3)   That the said cause of M. Talens vs. T. R. Anderson has been 'heard' or 'tried,' judgment and decree entered for plaintiff by default, for the full amount of his claim, sheriff's sale had and returned, more than ten days elapsed since the return of sale filed in the clerk's office, no objections filed or presented, and all proceedings therein being regular and according to the practices of the court, there remains nothing further to be done in said action excepting to present a formal order confirming the sheriff's sale in said cause, which order respondent is now and at all times has been ready and willing to sign, and has at all times so informed the attorney for the plaintiff, and that if any other question shall arise in said cause to be passed upon by the court, said cause will be, conformably to the order of February 19, 1917, entered upon the journal of the court, forthwith transferred to Department No. 2 of the superior court for Yakima county, Washington.

"(4)   That respondent has not attempted to and does not intend to exercise his jurisdiction as judge of said court to 'hear' or 'try' any question whatever that may arise in said cause or do any other act, as judge of said court, in said cause excepting to sign an order of confirmation therein whenever the same is presented by the plaintiff or his attorney, and does not now intend to and never has, nor will, 'hear' or 'try' any other question whatever therein; that instead of plaintiff having no other plain, speedy or adequate remedy excepting a writ of this court prohibiting respond-

ent from signing said order of confirmation, the plaintiff has a full, complete and speedy remedy, namely, the presenting of an order of confirmation of sale in said cause, which will be signed upon presentation."

It will be observed from the language of the return and from the journal entries the respondent caused to be entered, quoted therein, that the learned judge regarded the confirmation of the sale, since no objections were filed thereto, as a mere ministerial act not involving discretionary action, and that in sitting to hear the motion to confirm, he was not sitting "to hear or try an action or proceeding" within the meaning of the statute before cited, concluding therefrom that the affidavit of prejudice and the motion to transfer the hearing was necessarily frivolous and capricious and not such an affidavit and motion as he was required to regard.

The view taken by the learned judge of the nature of a confirmation proceeding had upon a sale of real property pursuant to a decree of foreclosure finds support in the language used by this court in the case of *State ex rel. Steele v. Northwestern & Pac. H. Bank,* 18 Wash. 118, 50 Pac. 1023. In that case it was said that, under our practice, a foreclosure sale is not, strictly speaking, a judicial sale, and in so far as confirmation is required, the proceeding partakes more of the nature of ministerial proceedings than of judicial action, although it was elsewhere stated in the opinion that "the effect of the order of confirmation is to conclusively establish the regularity of the proceedings concerning such sale." In the later case of *Otis Bros. & Co. v. Nash,* 26 Wash. 39, 66 Pac. 111, a wider view of such an order was taken. The case was on appeal from an order setting aside an execution levy and sale because of irregularities in the sale, after an order of confirmation had been entered. Judge Hadley, pronouncing the opinion of the court, used this language:

"If any such irregularity existed in this case, it should have been suggested by way of objection to the confirma-

tion. . . . This objection was made for the first time in
the amended petition. All these irregularities were cured by
the order of confirmation. Having regard to the stability
of real estate titles, an order confirming a sheriff's sale must
be held to be more than a mere formal order. It is the
solemn declaration of the court that the sale has been reg-
ularly and legally made, and those who would be in position
to avoid the consequences of such order must pursue the
method outlined by statute by making objections in time, so
that the entry of the order may be prevented, or, if entered,
may be reviewed by the appellate court if desired."

This language was quoted with approval in the similar
case of *Terry v. Furth*, 40 Wash. 493, 82 Pac. 882, where
the same view of an order of confirmation was taken. See,
also, *Johnson v. Bartlett*, 50 Wash. 114, 96 Pac. 833; *Strand
v. Griffith*, 63 Wash. 334, 115 Pac. 512; *McHugh v. Conner*,
68 Wash. 229, 122 Pac. 1018.

There is some confusion in our cases as to the questions
that may be considered on a motion to confirm an execution
sale (*Scott v. Guiberson*, 72 Wash. 36, 129 Pac. 886); but
they all agree that an order of confirmation is conclusive of
the regularity of the sale itself and precludes any subsequent
inquiry as to such regularity. The act of confirmation is,
therefore, something more than a mere formal or ministerial
act. It clearly involves judicial discretion when objections
thereto are made, and when the effect of the order is con-
sidered, it must do so, we think, even though standing un-
opposed. Clearly the court may, in such a case, inquire into
the regularity of the proceedings and refuse confirmation if
he finds that the prescribed method of making the sale has
not been substantially pursued. It is as much in the nature
of a judicial act, therefore, as is the act of entering a judg-
ment or decree in an action where the defendant duly served
made default, and certainly no one will contend that the entry
of a default judgment is either a formal or ministerial act, or
that a judge sitting to hear such an application would not
be sitting to hear or try an action or proceeding.

The statute provides that no judge of a superior court of the state of Washington shall sit to hear or try an action or proceeding when it shall be established that such judge is prejudiced against any party or attorney, or the interest of any party or attorney appearing in the cause; and provides that such prejudice may be established by motion supported by affidavit that the judge before whom the action is pending is prejudiced against such party or attorney, so that such party or attorney cannot, or believes he cannot, have a fair and impartial trial before such judge. The statute was intended to do away with the necessity, existing under prior statutes, of establishing actual bias or prejudice on the part of the sitting judge in order to obtain a trial before another judge. The statute permits of no ulterior inquiry; it is enough to make timely the affidavit and motion, and however much the judge moved against may feel and know that the charge is unwarranted, he may not avoid the effect of the proceeding by holding it to be frivolous or capricious. As we said in *State ex rel. O'Phelan v. Superior Court*, 88 Wash. 669, 153 Pac. 1078:

"Where an affidavit of prejudice is filed under this law, and the same is timely, and in a proper manner called to the attention of the judge against whom it is directed, such judge is thereby disqualified from further proceeding with the case, except in the particulars mentioned in the statute;"

and that the judge was thereafter empowered to do but

"one of four things: (a) Transfer the action to another department of the same court; (b) call a judge from some other court; (c) apply to the governor of the state to send a judge to try the case; and (d) if the convenience of witnesses, or the ends of justice will not be interfered with, and the action is of such a character that a change of venue may be ordered, he may send the case for trial to the most convenient county."

The affidavit of prejudice and motion in the present case was filed as soon as the relator knew that Judge Holden would preside over the department of the court in which his

cause was pending, and was thus timely. *State ex rel. Jones v. Gay,* 65 Wash. 629, 118 Pac. 830; *State ex rel. Beeler v. Smith,* 76 Wash. 460, 136 Pac. 678.

It follows, we think, that the court erred in denying the motion to transfer the cause.

Let the peremptory writ issue.

ELLIS, C. J., MOUNT, PARKER, and HOLCOMB, JJ., concur.